[Civ. No. 7935.   Third Dist.   July 18, 1951.]

KARM SINGH, Appellant, v. CARROLL A. COOK, Respondent.

Frank L. Murphy for Appellant.

Elliott, Atkinson & Sitton for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff Karm Singh commenced an action in unlawful detainer against defendant Carroll A. Cook and certain fictitious defendants. No fictitious defendants were served or appeared in the action, so Cook is the sole defendant. In his complaint plaintiff alleged he is the owner of a lot located at 211 N Street, Sacramento, and that on November 5, 1945, he entered into a written lease of the said property with defendant Cook. The complaint then went on to allege that said Cook had violated the terms of said lease in a number of particulars, among them, the provision that ''the Lessee shall personally occupy said demised premises and shall keep same in good repair.'' The complaint alleged further that plaintiff had been damaged in the sum of $2,500; that three days' notice for demand of surrender of possession had been given; that the lease provided that in an action to dispossess the lessee, said lessee shall pay attorney's fees and costs. The prayer of the complaint was for possession of the premises, the amount of rent due and unpaid, trebled, the damages found by the court, and $500 attorney's fees and also for costs.

The answer of defendant alleged that no purpose as to the use of the premises was designated in the lease; that it was agreed by the parties at the time that it was to be used as a rooming house. The violations alleged in the complaint were denied and it was alleged that everything done with respect to the premises was done with the knowledge and consent of the plaintiff. By way of a second separate defense it was alleged that prior to the date of the lease plaintiff solicited defendant to improve the premises in question as a rooming house, the understanding being that plaintiff would select the room in which he wanted to live; that following the execution of the lease, defendant spent $19,606.86 in reconstruction of the premises and $1,773.25 for furnishings; that when the reconstruction was completed, plaintiff selected a room and has since resided on the premises; that defendant has been in possession of the premises through his agent and employee, who

has actively managed the rooming house; that plaintiff has never offered to repay defendant the cost of reconstruction; that it was never agreed by the parties that defendant should personally live on the premises; that to permit plaintiff to forfeit defendant's rights as lessee would be unjust, unconscionable, and inequitable. By way of a third separate defense defendant realleged by reference the allegations of the second separate defense and set forth that plaintiff's alleged cause of action was barred by laches.

By way of cross-complaint defendant incorporated by reference all of the allegations of the second defense, and alleged further that in the preparation of the lease a printed form was used which contained the phrase "The Lessee shall personally occupy said demised premises"; that neither of the parties read or checked the printed terms prior to signing the lease; that it was never understood or contemplated that defendant would personally live on said premises and that said clause was inadvertently by mutual mistake permitted to remain in said lease, and he asked that the lease be reformed.

Following a trial before the court without a jury, and after findings had been waived, judgment was entered to the effect that all of the denials and allegations of defendant's answer and cross-complaint are true and that plaintiff take nothing, and further that the lease be reformed by striking out the clause that the lessee "shall personally occupy said demised premises." A motion for a new trial was denied and this appeal is from the judgment and from the order denying the motion for a new trial.

■ Appellant first contends that the trial court erred in denying his motion to set aside the default to the cross-complaint. The record shows that the complaint was filed on July 8, 1949, and that the answer and cross-complaint was filed on September 10, 1949. On February 14, 1950, the case first came on for trial but was continued to March 8, 1950, because of the illness of appellant's counsel. On the same day respondent had the clerk enter appellant's default for failure to answer the cross-complaint. On March 18, 1950, the cause came on for trial, and after the issues had been stated by respective counsel, the counsel for plaintiff (appellant is represented by different counsel upon this appeal) made an oral motion to set aside the default entered as to the cross-complaint, tendering an answer at the same time. No affidavit was filed in support of the motion and no showing of mistake, inadvertence, surprise or excusable neglect, as required by

section 473 of the Code of Civil Procedure was made. Counsel for plaintiff merely stated to the court that by stipulation he had been given until November 11, in which to answer the cross-complaint, and that nothing further had been done by him about filing an answer but that he relied upon his general understanding that Mr. Sitton, counsel for defendant, would never take a default against an attorney, although he had been given no such assurance in this case. The trial court in denying the motion, stated: ''Well, he hasn't made any showing at all, in respect to it, so I don't know that I can set it aside, but I expect to go into that question just as fully as though the answer was filed. So, you can do whatever you want. You haven't made any showing, Mr. Mitchell (counsel for defendant), you haven't made any showing which permits the Court to just say, 'We will set aside the default as to the cross-complaint,' but as far as that is concerned unless they prove it, of course, the Court will not give him that relief anyway. Proceed. Motion to set aside the cross-complaint is denied with the understanding the Court has stated:''

While courts should be liberal in setting aside defaults in order that litigation may be disposed of upon its merits, it requires no citation of authority to support a holding that in the instant case the trial court did not abuse its discretion in refusing to set aside the default. Furthermore it is apparent from the record that the court went into the matter fully and that no possible prejudice could have resulted to appellant from the denial of the motion.

Appellant next contends that the judgment is not supported by the evidence. We have read the record carefully and are convinced that the allegations of respondent's defenses and cross-complaint were amply proved. Appellant does not dispute this except to contend that it is clear that the provision as to the lessee's personally occupying the premises was breached. It was, of course, conceded and stipulated that respondent never personally occupied the premises, but the court determined upon sufficient evidence that that particular clause was left in the printed portion of the lease through inadvertence and mutual mistake. To have determined otherwise the court would have had to believe that respondent, who, with his family, was living, and had lived for 40 years, in an exclusive residential district in East Sacramento, had agreed to change his dwelling place to a rooming house in a business and industrial section near the Sacramento River.

The following summary, made by the learned trial judge

at the conclusion of the trial is amply sustained by the record:
"As I would gather the background of this case, here was an old building that had stood there for years after a fire had gutted it. In the condition which it was in it brought in no revenue. It stood in a part of the town that we know as a matter of fact is rather difficult to rent or to lease. There is not much doubt in the Court's mind but what it would be rather difficult to get anybody to finance this sort of a lease.

"The evidence here shows that at the time the lease was made it was perfectly satisfactory apparently to all parties, and while the lease does provide for the deposit of $3000.00, it does not provide any limitation as to the amount that should be expended. In paragraph 13 the lessees agree to make all improvements to the present building. After the term of the lease, of course, unless it were renewed from month to month which would be the case in case either party did not desire to extend this lease, the property and the full possession and control would be with Mr. Singh, the lessor.

"Now, if we look at the picture from the standpoint that Mr. Singh would undoubtedly not have been able to finance the reconstruction of that building in any shape, form or manner, the evidence shows he owed a lumber bill to one of the lumber companies for many years, and that bill, possibly not too large, Mr. Singh had not been able to pay. So, in the course of events it was settled and that particular part is not of great importance except to show the situation that existed. It would look to the Court as though Mr. Singh was trying to get something where he could have a living and an income. This lease provided for his occupying a room and $30.00 a month. It would be very unfair and inequitable after a lessee had put in the property more than $20,000.00 to have the lessee come in, or the lessor come in and try to void that lease unless he had very good grounds.

"The fact of the matter is that while it does contain this provision about personal occupancy, everybody knew from the beginning that it was never intended that Mr. Cook was going to occupy this personally. He is occupying the premises by an employee there and that apparently has been satisfactory and been going on ever since the lease was executed. Mr. Singh has lived there, knew all about it, never made any protest, and as a matter of fact since the notice was given to institute this proceeding, which was filed on July 8, 1949, Mr. Singh has been taking the rent ever since that time, been taking the rents ever since the lease was executed. You can-

not blow hot and cold at the same time. If he desired to try to void the lease, he should have done things consistent with that. You cannot void a lease by continuing to take the rent after you have given notice that the lease has been violated, and particularly is that true in a case such as this where he claims that probably the most important part was that the lessee was not occupying the premises, and yet under those conditions he goes right along and accepts the rent and justifies the lease. . . .

"So, when you look at the whole record, there is nothing here that would justify the Court in holding that any of the provisions material have been violated.

"Now, there isn't any question, as I have just stated, but what they all knew that this was going to be a rooming house, that it was going to be run by Mr. Cook and that he was not going to live in it. As he has explained, this particular provision, it was never intended by either party to have him come down there and run a rooming house."

In view of the foregoing, we believe that the judgment should be, and the same is hereby affirmed. The order denying appellant's motion for a new trial, being nonappealable, the appeal therefrom is dismissed.

Adams, P. J., and Van Dyke, J., concurred.